### Ex parte STOCKTON.    (No. 11380.)

Court of Criminal Appeals of Texas. Oct. 12, 1927.

Bail  &#9755;51—Evidence raising issues which, if believed, would not result in capital punishment for murder, held to authorize admission to bail.

Where defendant was indicted for murder, evidence in habeas corpus proceeding which unquestionably raised defensive issues which, if believed, would not result in capital punishment, *held* to authorize granting of bail in sum of $5,000.

Commissioners' Decision.

Appeal from Criminal District Court, Harris County; Whit Boyd, Judge.

Application by Robert Stockton for a writ of habeas corpus. From a judgment denying bail, relator appeals. Judgment reversed and bail granted.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellant.

Sam D. Stinson, State's Atty., of Austin, for the State.

MARTIN, J. Relator is charged by indictment in the district court of Harris county with the murder of Henry Reasby. He was denied bail.

Relator and deceased lived immediately across the street from each other, separated by a distance of about 30 feet. On the morning of the tragedy a row had been in progress between deceased and others in and about the house occupied by relator prior to his return home. Deceased and his wife, it appears, became engaged in an altercation that aroused the neighborhood, followed by a fight between one Charlie Williams and deceased, at which time Charlie Williams appears to have used the premises of relator to throw missiles from towards the house of deceased. During this time relator was absent from home, and upon his return he seems to have accosted Williams about raising a row about his premises and in an altercation shot Williams. This was followed by a controversy between deceased and relator which terminated in relator's shooting and

killing deceased with a shotgun, relator firing the shot from a point near his own premises at deceased, who stood on his own porch a few feet away.

The evidence is sharply conflicting as to the facts immediately preceding this tragedy. The testimony for the state would make an unprovoked killing upon express malice. For the relator evidence was introduced that he accused deceased, his wife, and Williams of raising a disturbance about his premises in his absence, charged Reasby and his wife with running a honkytonk joint and of bootlegging. Some evidence was introduced that their residence was kept open all night, with cars coming and going all night some nights.

Pearl Washington, one of relator's neighbors, testified that she heard the Reasby woman cursing relator. She said: "You G—— d—— s—— b——, when you get down to the foot of Capital you will learn to attend to your own business." He said: "I am not talking to you." She began cursing. She continued to curse, just continued, "You G—— d—— s—— b——." Continued just cursing for everything she could think of. I heard Reasby say something too. I heard him say to Stockton, "You G—— d—— s—— b——, I will get you if life lasts." Reasby said that to Stockton. When he made that remark he was standing on his porch, just standing with his hand down like this, the right hand down something like this. Behind his leg, like that. When Reasby said, "You G—— d—— s—— b——, I will get you if life lasts," he started up at this end and he started toward the steps. They were at the west end of the porch, and they started in this direction—started toward the steps. Reasby's wife was still cursing. She started with Reasby; she started right in just by the side of him. He cursed him again, "You G—— d—— s—— b——," and at that time I began to see him fall. I heard the shot, yes, a very light report, and he fell.

Earnest Washington, another neighbor of relator's and not related to Pearl Washington, testified in part, as follows:

"The first thing I heard was Robert Stockton was out talking concerning of the negroes raising cain around the place there at night. He came out and was talking about negroes raising hell every Saturday night and Sunday night when he was gone, didn't show a bit of respect to his womenfolks, and he didn't like it at all. By that time Reasby walks out and went to a fern bucket and picks up something and went and sat down. Reasby walked out of his house and went to a fern bucket and went back and sat down on the front porch. Then Charlie Williams walks out of Reasby's house and sat down on the front porch at Reasby's house and commenced talking, cursing back and forward to Robert Stockton; said he didn't give a G—— d—— about his respect for the womenfolks over there; he didn't care whether he liked it or not; it was just up to him whether he wanted to take it or not; he didn't give a damn about him or his womenfolks either."

Of the facts immediately surrounding the killing, he testified, in part:

"By that time Reasby spoke and said, 'You yellow s—— of a b——, look out there, I will get you,' and made an attempt to move off the porch at the time with his hand behind him. He said, 'You G—— d——, yellow s—— of a b——, I'll get you, look out.' When he said that, he made a move toward the steps and at that time the report of the gun. The report of the gun came when he moved toward the steps."

It was further shown that these parties had had previous difficulties and much ill feeling existed between them. It was shown by one witness for relator that he bore a good reputation. The chief witness for the state was the wife of the deceased. The quoted testimony on behalf of relator unquestionably raises defensive issues which, if believed, would not result in capital punishment. Coming from the neighbors of relator, we do not feel at liberty to hold that their testimony would be disregarded. Considering the testimony altogether, we are unable to assume that mitigating circumstances and defensive evidence, if introduced on the trial of the case, would be entirely rejected by a jury. The rules governing cases of this character have been so ofttimes stated, and we feel are so thoroughly understood by the profession, that a restatement would be useless. See cases of Ex parte Young, 87 Tex. Cr. R. 415, 222 S. W. 242; Ex parte Townsley, 87 Tex. Cr. R. 252, 220 S. W. 1092; Ex parte Burton, 75 Tex. Cr. R. 105, 170 S. W. 308; Ex parte Stevens, 85 Tex. Cr. R. 449, 213 S. W. 656; Ex parte Dooley, 74 Tex. Cr. R. 650, 170 S. W. 303; Ex parte Harris, 90 Tex. Cr. R. 246, 234 S. W. 398; Ex parte Hicks, 95 Tex. Cr. R. 450, 254 S. W. 1109; Ex parte Cuaron, 101 Tex. Cr. R. 175, 274 S. W. 610.

The judgment denying bail is reversed, and bail is granted relator in the sum of $5,000.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.